### DeLOACH v. THIRTY-SEVEN INCORPORATED.
No. 67-12686.

Circuit Court, Dade County.

December 31, 1968.

Morrow & Morrow, Miami, for plaintiff.

Paul A. Louis and Paul Siegel of Sinclair, Louis & Huttoe, Miami, for defendant.

B. J. DRIVER, Circuit Judge.

*Order on motion for new trial and for directed verdict n.o.v.:* This cause came on to be heard upon plaintiff Horace J. DeLoach's motion for new trial and for directed verdict n.o.v. Said motions having been ably argued to the court by means of written memorandums, it is found and ordered as follows —

Plaintiff sued defendant corporation as the owner and operator of a barroom in Dade County for assault and battery committed upon plaintiff by defendant's servant or agent, one Steve Marshall. Marshall was employed by defendant corporation to keep peace in defendant's barroom and, in the vernacular, was a "bouncer". Plaintiff and Marshall are both colored men and the bar catered primarily to the colored community of Miami.

The cause came on for trial and the jury found for the defendant and against the plaintiff.

The evidence developed that plaintiff had entered the barroom where Marshall was "keeping the peace" and, after having been in there for several hours, an altercation occurred between plain-

tiff and Marshall. The cause of the altercation is in dispute: the results are not. Marshall was armed with a pistol and shot DeLoach in the lower extremities.

Plaintiff contends that he was behaving himself and that if any disturbance occurred prior to the altercation with Marshall, it was of a minor and routine nature, and that he, plaintiff, was shot unnecessarily and without provocation by Marshall, who was attempting to wrongfully eject plaintiff from the premises, in the course of Marshall's employment as bouncer.

Defendant counters with the argument that from the evidence the jury could have, and did, infer that Marshall and DeLoach were vying for the favors of a certain female and that the shooting was not prompted by Marshall in the exercise of his duty as an agent of defendant corporation, but was the result of a personal vendetta, outside the scope of his employment, between plaintiff and Marshall. It is also arguable that Marshall was acting in self-defense.

Plaintiff complains that error was injected into the proceedings when the court instructed the jury, in substance, that if they found the shooting resulted from the "private vendetta" theory, they might find for the defendant. It is important to note at this point, first, that the plaintiff is not suing under the theory of negligence, but for assault and battery; and secondly, that under the instructions given to the jury the factual issue of whether or not a personal vendetta existed between Marshall and the plaintiff would be resolved by them, the jury, as well as that of self-defense. The jury found, apparently, either that the shooting of the plaintiff was motivated by personal reasons of Marshall rather than as an employee, or that he was acting in self-defense; in any event, they having decided either or both of these questions adverse to plaintiff that is the whole of it. The evidence was such that either plaintiff's theory of the shooting or the two theories of the defendant were arguable, and as such it became the duty of the jury to decide them.

Consequent upon the foregoing, the court finds that plaintiff's motion for a directed verdict n.o.v. must be decided against him, and it is ordered that the motion aforesaid be and the same is hereby overruled and denied.

*On motion for a new trial:* The court has considered plaintiff's motion for a new trial and will reserve comment only as to those grounds predicated upon permitting defendant to impeach plaintiff by the introduction of certain records tending to prove plaintiff had not spoken the truth from the witness stand at the trial when he denied prior convictions for certain crimes.

Plaintiff argues that in the first place two of the records, that is, one for public drunkenness and the other for hunting without a license, were not crimes, and even if they were, that it is unfair to cast upon the plaintiff, who is endowed only with a high school education and unlettered in the law, the burden of deciding "what is a crime" and what is not. The ingenuity of his argument is exceeded only by its futility. When the plaintiff took the stand he was expected to tell the truth, and to permit him to evade this responsibility by complaining that he was ignorant of what the question meant is to "skin a gnat for its tallow." Having denied the number of times he had been convicted made him vulnerable to impeachment by the truth, in this case the records of his convictions in the courts of Dade County.

The plaintiff also complains that the documentary proof, consisting of the records of plaintiff's convictions, should not have been permitted to go to the jury room. This proof, having been found by the court to be admissible, was for the consideration of the jury for the purpose of impeachment, and it would have been error to refuse the jury the right to examine these records so that they might satisfy themselves as to what these records said.

The court has not overlooked the other arguments of counsel, but find them to require no discussion. Plaintiff's motion for a new trial is accordingly overruled and denied.

*Order on defendant's motion to tax costs and plaintiff's objections thereto:* Defendant's motion to tax costs having been submitted to the court and thereafter plaintiff having filed a written memorandum objecting to the taxing of certain of said costs, to which memorandum defendant filed his rebuttal, and the court having considered the same and otherwise being fully advised in the premises, makes the following findings and ruling —

A substantial portion of the costs for which defendant seeks reimbursement involve the cost of taking pretrial depositions. There was a time in the jurisprudence of this state, and most others, when "fishing expeditions" were frowned upon and rarely, if ever, permitted. This is no longer the rule. The 1967 Florida Rules of Civil Procedure, and its antecedents, have by their provisions dealing with pretrial discovery made them in effect a "fishing license". This permits a litigant to mount almost at his whim piscatorial pilgrimages into any area under the domain of his adversary. They do not, however, give to the person seeking discovery a blank check on his adversary's funds. It may be said that a litigant may go on as many "fishing expeditions" as he chooses, but in doing so he may ultimately have to cut his own bait.

The court will confine its ruling herein only to those objections which it finds to be well taken. The objections to the following are sustained —

The charge of $5 for the first McCoy deposition, for the reason that the same was not used at the trial. $5 witness fee for second McCoy deposition. $15 court reporter's attendance fee at McCoy deposition. $7.50 for transcript of McCoy deposition. $31.25 court reporter's fees for deposition and transcript of Norman McCoy. $88.75 court reporter's fee for transcript in State v. Horace DeLoach. $7 charge for serving James Davis and Ira Lee Morgan re taking of deposition. $6.10 witness fee for Ira Lee Morgan. $16.25 court reporter's fee for attendance and certificate of non-appearance of Ira Lee Morgan. $5.60 for witness subpoena, Dr. Claude Holmes. $66.25 for deposition of Horace J. DeLoach, May 7, 1968. $90 for deposition of Ira Lee Morgan. $40 for deposition of Horace J. DeLoach, June 17, 1968.

It is therefore ordered and adjudged that defendant's motion to tax costs against plaintiff is granted except as to those items to which objections were sustained as above ordered.

The court does not deem it necessary to comment on overruling of the objections to other items of cost except that which pertains to the $62.89 for Zerox copies of hospital records, payable to Biscayne Engineering. Plaintiff's thriftiness in obtaining the same copies for $10 is commendable; however, the copies were used at trial by defendant and if he found it necessary to have some agency go to the original records and make copies thereof, it cannot be said that $62.89 is excessive in view of the voluminous nature of the records.